**Martin T. WOHL, Plaintiff-Appellant,**

v.

**SPECTRUM MANUFACTURING, INC., Defendant-Appellee.**

No. 95-3610.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1996.

Decided Aug. 28, 1996.

Aron D. Robinson, Bruce J. Goodhart, Matthew H. Berns (argued), Holstein, Mack & Klein, Chicago, IL, for plaintiff–appellant.

Terry J. Smith, Barry C. Kessler (argued), Kessler, Smith & Powen, Chicago, IL, for defendant–appellee.

Before BAUER, ESCHBACH, and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

Plaintiff–Appellant Martin Wohl was hired as Controller of Defendant–Appellee Spectrum Manufacturing, Inc., in 1988. In 1992, at the age of 54, Wohl was fired and replaced by Joe Holloway, who is approximately 20 years younger than Wohl. Wohl then filed suit against Spectrum, alleging that Spectrum fired him because of his age, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA").

Spectrum filed a motion for summary judgment. The court analyzed Wohl's claim under the indirect, burdenshifting method of proof first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later applied to ADEA claims. *See McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 371 (7th Cir.1992); *see also Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122–24 (7th Cir.1994) (discussing the particulars of the burden-shifting approach). The court found (or, more appropriately, presumed) that Wohl had made a prima facie case for age discrimination. The court also found that Spectrum had met its burden of rebutting the presumption of age discrimination by articulating a legitimate, nondiscriminatory reason for its action. The court, therefore, required Wohl to prove that Spectrum's "reasons" for firing Wohl were a pretext for age discrimination. The court held that Wohl failed to raise a genuine issue of material fact and the court granted Spectrum's motion for summary judgment. Wohl appeals from that decision, arguing that he raised a genuine issue of material fact as to whether Spectrum's proffered reason for his firing was a

lie. We agree with Wohl and we reverse and remand for further proceedings.

## I.

■ We review *de novo* the district court's grant of a motion for summary judgment, *Schultz v. General Electric Capital Corp.*, 37 F.3d 329, 333 (7th Cir.1994), *cert. denied sub nom. Alley v. General Electric Capital Corp.*, —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995), and we view the record in the light most favorable to the non-moving party. *McCoy*, 957 F.2d at 369. We apply the summary judgment standard rigorously in employment discrimination cases such as this because intent and credibility are crucial issues. *Courtney v. Biosound*, 42 F.3d 414, 419 (7th Cir.1994).[1]

■ A plaintiff in an age discrimination case may defeat a summary judgment motion brought by the employer if the plaintiff produces evidence that the employer proffered a phony reason for firing the employee. *Anderson*, 13 F.3d at 1123. The Supreme Court's opinion in *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), specifically permits, but does not require, the fact-finder "to infer the ultimate act of intentional discrimination" based upon such evidence. *Id.* at 511, 113 S.Ct. at 2749. Therefore, to avoid summary judgment, Wohl must raise a genuine issue of material fact regarding the sincerity of the proffered reasons for his discharge. With this framework in mind, we discuss the relevant facts in the instant case.

## II.

Spectrum is a small manufacturing company that makes specialized machine parts. Wohl had a variety of responsibilities as Spectrum's Controller. These responsibilities included financial and cost accounting, payroll, coordination of liability insurance and administration of the company's 401K plan.

Shortly after Wohl was hired, he investigated and purchased a new computer ac-

counting program at the company's behest for approximately $3,000. Spectrum eventually outgrew this system and Wohl was directed to assess the purchase of a more sophisticated system that would permit management to track profitability by department and job lot. Wohl and Spectrum's president, James Ceriale, opted for a software accounting system called "DCD." The company purchased the DCD software and the hardware necessary to implement the program at a cost of slightly more than $100,000.

The company opted for this system because it was capable of sophisticated cost accounting. Cost accounting requires the company and its employees to input the variable costs associated with a single job (*i.e.*, materials, labor, and machine overhead) along with proportionate fixed costs (general overhead and administration). These figures are then matched against billing for each job. The resultant analyses provide the company with detailed information regarding the company's efficiency, productivity, and sources of profit and loss. This system, like all computer systems and all accounting systems, is dependent on the input of accurate information. For example, the system requires production floor employees to log on to a computer terminal and input their personal identification number and a job account number before working on a particular job with a particular machine. The employee signs off after completing that period of work. If the information that the employee enters is inaccurate, the output data will be inaccurate. Garbage in, garbage out.

■ In its motion for summary judgment, Spectrum suggested that it had fired Wohl for two reasons: (1) his failure to "get along with" general manager Greg Reuhs and (2) his inability to produce certain computer accounting reports—specifically, computer-generated job costing reports from the DCD system. The district court found that these were legitimate, nondiscriminatory reasons for Wohl's termination. The court also found that Wohl had failed to create a genuine issue of material fact regarding whether

---

1. This is not to say that there is a hierarchy of the rigor with which we review cases on summary judgment. There is one summary judg-
ment standard and we apply it rigorously in all cases. It is, however, of particular import in cases that turn on intent and credibility.

Spectrum's second reason [2] was false—a pretext for age discrimination. Wohl admits that he did not produce accurate and reliable job costing reports for Spectrum. This is, however, only half of the story. Wohl alleges that general manager Greg Reuhs was responsible for the system's failure. Wohl also claims that he complained to Spectrum's management about Reuhs's actions and that Spectrum's management instructed him to get along with, and defer to, Reuhs. This allegation is significant because, if true (and we must assume for purposes of summary judgment that it is true), it creates a genuine issue of material fact regarding whether Spectrum's proffered reason for firing Wohl was a pretext for age discrimination.

The evidence indicates that Wohl and Reuhs had clashed early on in Wohl's tenure at Spectrum. Reuhs was primarily responsible for manufacturing, but he had assumed responsibility in a number of other areas and was given great deference by Spectrum's management. For example, Reuhs insisted on taking responsibility for billing, an area that ordinarily belongs under the supervision of the Controller. When Spectrum first hired Wohl, Wohl had questioned some of the billing practices maintained by Reuhs. Reuhs had an unorthodox policy of keeping particular jobs open and refusing to abide by a standard month-end cutoff. By employing this unorthodox policy, Reuhs was able to manipulate department profitability and "steal" billing from, and allocate labor to, subsequent months. Reuhs's sleight of hand prevented management from obtaining an accurate picture of department profit and loss.

Reuhs's tinkering with billing so concerned Wohl that he brought the matter to Spectrum's management's attention. Wohl informed Jim Ceriale, Tom Brandseth, and William Fricke about his concerns at a luncheon meeting. Ceriale, Brandseth, and Fricke were the founders and managers of the company and Ceriale was its president. At this luncheon meeting, Wohl was specifically directed to "get along with" Reuhs and to work out their differences. Wohl stated that it was clear to him "that the company considered Reuhs, who was the younger man, to be a key player in the organization, and that he was to be appeased." Following the meeting, Wohl learned to get along with Reuhs and performed his duties to the fullest extent without clashing with Reuhs.

As part of his duties in implementing the DCD system, Wohl was responsible for setting up the computer with certain fixed information, including overhead, employee identification numbers and employees' rates of pay. Wohl entered this information but was unable to produce the desired reports because production floor employees were supposed to supply much of the variable cost data, but did not do so accurately. Wohl did not have authority to manage these production floor employees; the employees were supervised by Greg Reuhs. The reports were unreliable because these employees failed to enter the correct data. Reuhs further compromised the integrity of the reports by failing to close out completed jobs and deliberately manipulating the billing cutoff dates.

The facts create a genuine issue of material fact with respect to both of Spectrum's proffered reasons for firing Wohl. First, Wohl claims that he learned to "get along with" Reuhs. Wohl's claim that he learned to "get along with" Reuhs is corroborated by Spectrum's own outside accountant, Charles Gries. Gries testified at his deposition that "Greg [Reuhs] never felt that he had a problem with Mr. Wohl" and that Reuhs "was always very complimentary of him." The evidence is more than sufficient to create a genuine issue of material fact. Especially when looked at in the light most favorable to plaintiff, a reasonable jury could find that Wohl and Reuhs got along fine and that Spectrum did not fire Wohl for failing to get along with Reuhs.

Second, Wohl has raised a genuine issue of material fact regarding Spectrum's second reason, failing to produce accurate and reliable computer reports. A reasonable jury could find that Spectrum's second reason was false because Spectrum knew that Reuhs's actions prevented Wohl from implementing

---

**2.** The district court never reached the issue whether Wohl had raised a genuine issue of material fact regarding Wohl's relationship with Reuhs.

the DCD system,[3] yet Spectrum failed to take any action to monitor or alter Reuhs's management of the production floor employees and failed to take action to prevent Reuhs from manipulating data to produce artificially good results. In fact, Wohl had summoned sufficient courage to bring his specific concerns regarding Reuhs's behavior to the highest level of management, but Spectrum's only response was to tell Wohl to get along with Reuhs. That Spectrum claimed that it fired Wohl for failing to "get along with" Reuhs further lends credence to Wohl's claim that Spectrum preferred him to defer to Reuhs rather than rocking the boat in order to obtain accurate data from the production floor employees.

Wohl's claim is distinct from a simple attempt to pass the buck on responsibility for producing DCD reports to Reuhs. *See Schultz v. General Electric Capital Corp.*, 37 F.3d 329, 334 (7th Cir.1994) (simply shifting the blame for a problem does not establish pretext). Wohl claims that Spectrum *knew* it was firing the wrong employee all along and pointed to the DCD system as an after-the-fact excuse. *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir.1995) (pretext established for summary judgment by evidence that employer did not honestly believe its proffered reason); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 423 (7th Cir.1994) ("Given the conflicting evidence, a reasonable juror could conclude that [defendant] did not honestly believe that [plaintiff] was responsible for the mishap, but only claimed that the mishap was plaintiff's fault as an excuse not to hire him.").[4] Wohl's claim "create[s] an issue as to whether [Spectrum] honestly believes in the reasons it offers, not whether [Spectrum] made a bad decision." *Sample v. Aldi, Inc.*, 61 F.3d 544, 549 (7th Cir.1995) (citation and internal quotation marks omitted); *see also Schultz*, 37

3. The dissent hangs its hat on its belief that Wohl's complaints about Reuhs's billing practices cannot create a question of material fact as to whether Spectrum's proffered reason was a lie. The dissent claims that "[t]here is nothing in the record to support the statement that 'Spectrum knew that Reuhs' actions prevented Wohl from implementing the DCD system ...,' " noting that Wohl complained about Reuhs's phony billing practices before DCD was purchased. The dissent's position is untenable for two reasons. First, there is nothing unusual about inferring knowledge of a later fact (Reuhs' refusal to input accurate DCD data) from awareness of an earlier fact (Reuhs' refusal to input accurate data prior to purchase of the DCD). Furthermore, Wohl specifically raised this issue of fact. *See, e.g., Plaintiff's Local Rule 12(n) Response to Defendant's Statement of Facts in Support of Summary Judgment*, at para. 7 ("Answering further, Plaintiff alleges that Spectrum management *was at all times aware of the true reasons for the problems with the reports* and simply elected to back Reuhs, the younger man they viewed to be the future of the company ...." (emphasis added)). As evidentiary support, Wohl cites to a Spectrum memo contained in the record:

> The new computer system will be used for Accounts payable, check preparation, and general Ledger starting July 1st. Sometime during July Greg [Reuhs] will start recording all work performed on jobs on the new system and go off the old system for that purpose. We should be able to start generating invoices off of the new system shortly thereafter.

Nowhere does Spectrum claim that it was unaware of Reuhs's actions. On summary judgment we review the record in the light most favorable to Wohl and draw all reasonable inferences in his favor. There is clearly enough evidence to create a factual issue whether Spectrum knew that Greg Reuhs was responsible for the inability to produce accurate DCD reports.

Second, the dissent ignores the fact that Wohl complained to Spectrum management that Reuhs was rigging the billing system to create a pleasing, but inaccurate, picture of department of profit and loss and *Spectrum's only response was to instruct Wohl to get along with Reuhs*. Spectrum's response supports an inference that they knew that Reuhs was responsible for the DCD reports because Spectrum's failure to stop the practice indicated that Spectrum actually condoned Reuhs's billing data high jinks. Spectrum not only had knowledge of Reuhs's actions, they also authorized his actions. If Wohl had continued to conflict with Reuhs, Spectrum would have had a legitimate reason to fire him. The record reflects that Wohl chose to get along with Reuhs. Under the dissent's view of the matter, there would be no such thing as a pretext, because the company could always instruct an employee to satisfy two mutually exclusive mandates. Heads I win, tails you lose. We do not support such a position.

4. The dissent states that "[t]here is simply no way of stretching a statement, 'I didn't do what the company expected but it wasn't my fault,' into an age discrimination claim." The dissent ignores the facts and tells only half the story. Wohl's claim is that "I didn't do what the company expected but it wasn't my fault *and the company knew it wasn't my fault but fired me anyway!*"

F.3d at 334 (noting that evidence that employer *knew* that its reason for firing employee was based on erroneous or irrelevant information is distinct from evidence that merely shows that the employer made a mistake and would permit a fact-finder to find that the employer lied).

Wohl points to a number of additional factors that support his claim that Spectrum's proffered reasons were a pretext for age discrimination: Spectrum's files contain no indication of any disciplinary action or informal concern with Wohl's performance and Wohl received a 25 percent pay raise less than 6 months before he was fired; Wohl provided substitute reports using less-sophisticated software that Spectrum's outside accountant, Gries, admitted "were very good" and were more than sufficient to generate the company's year-end financial statements; and Wohl's "replacement," Holloway, experienced the same problems as Wohl in implementing the DCD system because Reuhs refused to adopt a standard billing cut-off and was unwilling to get cooperation from the production employees. These facts all support Wohl's contention that his failure to produce accurate and reliable reports was not the true reason that he was fired. We recognize that a reasonable fact-finder may infer contrary conclusions, but we reemphasize that all reasonable inferences must be viewed in the light most favorable to the nonmoving party on summary judgment.

■ The facts also support the conclusion that Wohl had established a *prima facie* case, the first step in the burdenshifting method of proof. The general elements of a *prima facie* case of age discrimination are that: (1) plaintiff was in the protected class, (2) plaintiff performed well enough to meet the employer's "legitimate expectations," (3) plaintiff was discharged, and (4) the employer sought a replacement for plaintiff.

*Anderson,* 13 F.3d at 1122. Spectrum concedes that plaintiff established three of the four elements. Spectrum suggests, however, that summary judgment was appropriate in this case even if it lied about its reasons for firing Wohl because Wohl did not meet Spectrum's legitimate expectations. We disagree.

Spectrum gave Wohl a substantial raise just before he was fired, Wohl produced financial reports as best he was able, and Spectrum provides no documentary evidence that Wohl did not meet their legitimate expectations. Plaintiff also stated in his affidavit that "[u]ntil I was fired, I had every reason to believe that the company was happy with my performance. I was never given any indication that Spectrum considered my efforts at implementing DCD to be deficient." *See Courtney,* 42 F.3d at 418 ("The nonmoving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion."); *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 n. 7 (7th Cir.1988) (quoting *Williams v. Williams Electronics,* 856 F.2d 920, 923 n. 6 (7th Cir.1988), for the proposition that plaintiff may establish that he performed the job well enough to meet the employer's legitimate expectations based solely upon plaintiff's own testimony regarding the quality of his work). This is essentially a swearing contest. Summary judgment is not the appropriate place to resolve this *genuine* dispute over a material fact.

■ Finally, Spectrum's claim that it fired Wohl for failure to get along with Reuhs also cuts against Spectrum's suggestion that Wohl did not perform well enough to meet Spectrum's "legitimate expectations."[5] Spectrum argues that Wohl cannot establish that he met Spectrum's legitimate expectations because "Plaintiff admitted he failed to perform key elements of his job, *i.e.,* the production of job costing reports through

**5.** The dissent states that "[t]he fact is, the DCD system was put to work—satisfactorily—by Reuhs' successor" in apparent support of its position that the company's reason for firing Wohl were legitimate. The full facts of the case, however, support Wohl's position. Joe Holloway, Wohl's replacement, did not have *immediate* success in implementing the DCD system. Initially, he experienced the same problems as Wohl, that is, Reuhs's refusal to adopt standard billing practices and his failure to get appropriate input from production floor employees. Holloway did eventually produce accurate DCD reports, but only after Reuhs was fired in August 1993, nine months after Wohl was terminated. Wohl maintains that management simply elected to back Holloway, who is even younger than Reuhs.

implementation of DCD." Yet, there was an inherent tension between "getting along" with Greg Reuhs and compiling accurate and reliable information relating to job costing reports. Wohl pointed out this tension to Spectrum's management. Management indicated to Wohl that appeasing Reuhs should be his priority. Thus, Spectrum's expectations regarding the DCD system and the production of accurate and reliable reports are not "legitimate" unless they are viewed in isolation. "The prima facie case . . . is a flexible standard that is not intended to be rigidly applied." *Collier,* 66 F.3d at 890 (internal quotation and citation omitted). Spectrum's "legitimate" expectations must include a balancing of priorities: The expectation that Wohl produce the DCD reports must be balanced against Spectrum's stated expectation that Wohl get along with Reuhs. Summary judgment is inappropriate because Wohl has produced sufficient evidence that he met all of Spectrum's "legitimate expectations."

### III.

Wohl has established a prima facie case for age discrimination and a trier of fact could reasonably conclude that Spectrum's proffered reasons for firing Wohl were false. Thus, Wohl has established a genuine issue of material fact. The district court's grant of summary judgment in favor of Spectrum is therefore REVERSED and REMANDED.

BAUER, Circuit Judge, dissenting.

I respectfully dissent. The opinion states: "Wohl admits that he did not produce accurate and reliable job costing reports for Spectrum. This is, however, only half of the story. Wohl alleges that general manager Greg Reuhs was responsible for the system's failure. Wohl also claims that he complained to Spectrum's management about Reuhs' actions and that Spectrum's management instructed him to get along with, and defer to, Reuhs. This allegation is significant because, if true (and we must assume for purposes of summary judgment that it is true), it creates a genuine issue of material fact regarding whether Spectrum's proffered rea-

son for firing Wohl was a pretext for age discrimination."

I simply cannot accept this. The brief of appellant Wohl accurately reflects the complaint he made about Reuhs. Wohls' affidavit says that he questioned Reuhs' practices as "manipulating department profitability" and "preventing management from seeing a true picture of department profit and loss." The affidavit recites that Wohl brought this matter to the attention of Spectrum management early on in his tenure, within 6 to 9 months after he was hired, *"even before DCD was implemented."* This was at the luncheon when Wohl was "specifically told to get along with and defer to Reuhs." There is nothing in the record to support the statement that "Spectrum knew that Reuhs' actions prevented Wohl from implementing the DCD system. . . ." The complaint about Reuhs from Wohl came many months before the DCD system was purchased.

The fact is, the DCD system was put to work—satisfactorily—by Reuhs' successor. Wohl, who acknowledged in his deposition that it was his responsibility to implement the DCD equipment, also acknowledged that he was never capable of utilizing the $100,000 DCD to provide accurate and reliable costing reports for Spectrum. There is nothing to suggest that Spectrum was told by Wohl that the DCD problem was caused by some hanky-panky or shortcomings of Reuhs'— Wohl's beef about Reuhs was long before the company even acquired the DCD and *that* complaint could not possibly be considered as creating a fact question as to whether Spectrum's proffered reason was a pretext for age discrimination.

There is simply no way of stretching a statement, "I didn't do what the company expected but it wasn't my fault," into an age discrimination claim. I do not know, nor is it significant in terms of this law suit, whether Reuhs was a terrible supervisor or Wohl a malcontent. Wohl admits that he didn't produce "accurate and reliable job costing reports for Spectrum." That provides the basis for the firing and not any implication of age discrimination.

And, in passing, I hesitate to join an opinion that would force a company to pause

before giving a pay raise to an employee lest it be used to create an element of job tenure that cannot be overcome in the event the employee bogs down and the company wishes to fire him or her. Giving an incentive pay raise to stimulate work is not unknown nor is it even suspicious. (Both Reuhs and Wohl received 25 percent pay raises.) The stimulus was a failure; three months later the job costing reports were still not produced. All of this is uncontroverted. Whether Wohl couldn't produce the work because he was inept or couldn't produce the work because it was Reuhs' fault is immaterial; the company believed—and Wohl admitted—that he couldn't do what the job required and so he got fired. And when Reuhs couldn't do it, he got fired.

The record in this case, in the best light for the plaintiff, should not survive a motion for a directed verdict for the defendant if the case is tried. Whether Wohl agreed with the decision of the company to give him the gate and keep Reuhs and whether we agree with that business decision, is not relevant to the proceeding. I would affirm.