**Kilduff J. KING, Plaintiff,**

**v.**

**WISEWAY SUPER CENTER, INC. et al., Defendants.**

**No. 2:95 CV 387JM.**

United States District Court, N.D. Indiana, Hammond Division.

Feb. 4, 1997.

Donald R. Capp, Crystal Sharp Bauer, James James and Manning P.C., Dyer, IN, for plaintiff.

James E. McHie, McHie Myers McHie and Enslen, Hammond, IN, John S. Schauer, Stephanie L. Perl, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, for defendants.

### ORDER

MOODY, District Judge.

Defendant WiseWay Super Center, Inc. ("WiseWay") is in the retail grocery business operating four stores in northwest Indiana.

Plaintiff Kilduff J. King ("King") was hired as a cashier in 1987. In 1990, she was promoted to the position of "front-end manager." On April 21, 1995, King was demoted to a cashier's position. WiseWay alleges that the demotion occurred due to King's poor performance in the managerial position. King alleges that the demotion was on account of her gender, and brings suit against WiseWay pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*). In addition, King brings a state-law claim for intentional infliction of emotional distress against WiseWay and her immediate supervisor, Rick Green.[1] WiseWay and Green seek summary judgment pursuant to FED.R.CIV.P. 56 on both of King's claims. (For convenience, in the remainder of this order all references to WiseWay include Green.)

Summary judgment is mandated if there are no genuine issues of material fact and the undisputed facts establish that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). If, viewing the record and all reasonable inferences therefrom in the light most favorable to the plaintiff no reasonable jury could find in the plaintiff's favor, a summary judgment should be entered for the defendant. *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

In this case King, like all plaintiffs bringing Title VII claims, has the ultimate burden of persuading the trier of fact that she was a victim of intentional discrimination; i.e., that her gender was a dispositive factor motivating the decision to demote her from her managerial position. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Because the factual question of intentional discrimination is often elusive, the Supreme Court has established "an allocation of the burden of production and an order for the presentation of proof." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 503–506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993); *Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. at

---

**1.** Other defendants and other claims have been dismissed in prior orders or voluntarily by plaintiff.

1094 n. 8, 67 L.Ed.2d at 216 n. 8; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

Briefly stated, in those cases where there is no direct proof of discrimination, the scheme established by the *Hicks/Burdine/McDonnell Douglas* trilogy requires the plaintiff to present, by a preponderance of the evidence, a so-called *McDonnell Douglas* prima facie case. *Hicks*, 509 U.S. at 506–508, 113 S.Ct. at 2747. The *McDonnell Douglas* prima facie case entitles the plaintiff to a presumption of discrimination, requiring the defendant to articulate a legitimate nondiscriminatory reason for its actions. *Id.* If the defendant does so, the presumption drops from the case, and the plaintiff must demonstrate pretext: that the defendant's proffered reason was not the true reason for its employment decision, unlawful discrimination was. *Id.*

In the context of surviving a defendant's motion for summary judgment, this means that the plaintiff must demonstrate that he has produced sufficient evidence " 'from which a rational factfinder could infer that the company lied' about its proffered reasons for his dismissal." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994) (quoting *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990)). The puzzling question is whether, to defeat summary judgment, the plaintiff must show the court evidence of pretext that differs, in kind and quantity, from the evidence which establishes a prima facie case.

It appears that the Court of Appeals for the Seventh Circuit thinks the plaintiff must do so. In *Pilditch v. Board of Education*, 3 F.3d 1113, 1116 (7th Cir.1993), decided after *Hicks*, the Court of Appeals, explaining the effect of the employer having met its burden of production, remarked: "if the employer does explain, the presumption shifts again—

it is assumed that the employer did not discriminate." [2] This final presumption in the defendant's favor effectively places a new burden of production on the plaintiff, making it impossible for the plaintiff to survive a defendant's motion for summary judgment by resting on the merits of the prima facie case. See *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349–50 (7th Cir.1997) ("In order to prove pretext, Plair's burden is to squarely rebut the articulated reason for his discharge."); *Weisbrot v. Medical College of Wisconsin*, 79 F.3d 677, 682 (7th Cir.1996) (After *Hicks*, a discrimination case "turns upon the credibility of witnesses only when the employee offers specific evidence from which the finder of fact may reasonably infer that the employer's proffered reasons for the adverse job action do not represent the truth.")

If this is so, in every case where the employer's subjective assessment of the plaintiff is the proffered reason for the employment action taken, the plaintiff faces a nearly impossible burden: proving a negative—that the employer is not telling the truth—with no direct evidence of discrimination.[3] And evidence of discrimination is what is needed, as simply proving that the employer made a stupid decision will probably not be enough to make that decision suspect, because employers are entitled to make arbitrary, even wrong, decisions as long as those decisions are not discriminatory. *Kralman v. Illinois Dep't of Veterans Affairs*, 23 F.3d 150, 156 (7th Cir.1994) ("there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or a bad business judgment"); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989). This is a curious result when "the initial elements of an indirect prima facie case ... are designed to see that

---

**2.** Although *Pilditch* discussed the burden-shifting method of proof in the context of reviewing a full trial record, the case is equally germane to consideration whether a plaintiff opposing summary judgment has shown that issues of fact exist for trial.

**3.** In 26 published opinions in 1996 applying the *McDonnell Douglas* methodology to district court decisions granting summary judgment, five decisions were reversed because disputed material facts made summary judgment inappropriate. See *Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1006–07 (7th Cir.1997) (collecting cases).

the plaintiff can get beyond summary judgment even though direct evidence is absent." *Pilditch,* 3 F.3d at 1117.

This becomes more curious after examining *Hicks* and its ancestors closely and finding no suggestion that the effect of the defendant employer meeting its burden of production is to entitle the defendant to a presumption of non-discrimination and place some new burden of production on the plaintiff. To the contrary, if "the defendant has succeeded in carrying its burden of production, the McDonnell Douglas framework—with its presumptions and burdens—is no longer relevant." *Hicks,* 509 U.S. at 510–11, 113 S.Ct. at 2749.

Moreover, while the plaintiff's presumption of discrimination drops from the case once the defendant meets its burden of production, the *inference* of discrimination created by plaintiff's prima facie case remains. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. This sentence is nonsense if the inference of discrimination evaporates along with the presumption, considering that a plaintiff must show both that the employer's proffered reason is false, and that discrimination is the real reason for the employment decision. *Hicks,* 509 U.S. at 511 n. 4, 113 S.Ct. at 2749 n. 4. Nonsense, because disbelief of the employer, with only the addition of the prima facie case, can sustain plaintiff's ultimate burden of showing intentional discrimination only if the prima facie case's inference of discrimination exists throughout the case.

In practical terms, in nearly every case this inference alone should be seen as creating a question of fact, precluding summary judgment, even after the defendant meets its burden of production. In this court's view,

*Hicks* clearly says as much: "The defendant's 'production' (whatever its persuasive effect) having been made, the **trier of fact** proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race." *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749 (emphasis added, citation omitted). " 'If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted,' and 'drops from the case.' The plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through **cross-examination of the defendant's witnesses,** 'that the proffered reason was not the true reason for the employment decision,' and that race was." *Id.,* 509 U.S. at 507–508, 113 S.Ct. at 2747 (emphasis added, internal citations omitted).

In a case where the plaintiff has no direct evidence of discrimination—precisely the type of case that the *Hicks/Burdine/McDonnell Douglas* trilogy addresses—and particularly where the employer's subjective judgment of the employee's qualifications is the decisive issue, how better than through cross-examination might a plaintiff show that the defendant's proffered reasons are untrue? Thus, after both plaintiff and defendant in a discrimination case have met their initial burdens of production, the case can be decided against the plaintiff on summary judgment—if ever—only when the plaintiff's prima facie case is so weak and the defendant's explanation for its decision so convincing that no reasonable jury could find for the plaintiff. Cf. *Carson v. Bethlehem Steel Corp.,* 882 F.Supp. 765, 768–69 (N.D.Ind. 1995).

Nevertheless, as this court now has tried to explain at length, the Court of Appeals for the Seventh Circuit apparently does not read *Hicks/Burdine/McDonnell Douglas* in the same way.[4] Although it disagrees with the

---

4. *But see Sheehan v. Daily Racing Form, Inc.,* 104 F.3d 940, 941 (7th Cir.1997) ("A plaintiff can avert summary judgment for the defendant in an employment discrimination case ... by establishing a prima facie case under the *McDonnell Douglas* formula."); cf. *Pilditch,* 3 F.3d at 1119 ("we pressed counsel for Pilditch to spell out

what specific evidence in the record showed that the defendants intentionally discriminated against his client. To our repeated entreaties, he could only respond that we must look at the totality of the circumstances. We have. Because there is no proof of discrimination, the

existing precedent, this court is well-aware that it must adhere to that precedent when determining if King has presented evidence from which a jury could find that WiseWay's explanation is a pretext for intentional discrimination. *Donohoe v. Consolidated Operating and Production Corp.*, 30 F.3d 907, 910 (7th Cir.1994).

First, WiseWay's argument that King has failed to present even a prima facie case can be dispatched quickly. WiseWay argues that to establish a prima facie case, "King must show that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action—i.e., she was demoted—; and (4) similarly situated employees outside her class were treated more favorably." WiseWay's Memorandum at 7. WiseWay argues that King has offered no evidence to establish either the second or fourth element of a prima facie case.

■ Turning to the fourth element first, WiseWay's statement of this element of the prima facie case is not applicable to the circumstances of this case.[5] A comparison to "similarly situated employees" was[6] the fourth element in reduction-in-force cases. *Oxman v. WLS–TV*, 846 F.2d 448, 453–55 (7th Cir.1988). It is impossible in this case to compare King to similarly-situated employees "outside her class," because there were only three other front-end managers, and they were all females. In addition, any comparison to such a small sample would seem to be of little or no probative value. Instead, in demotion/discharge cases, the fourth element of the prima facie case asks whether the employer sought a replacement for the displaced employee. *Anderson*, 13 F.3d at 1122; *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993); *Oxman*, 846 F.2d at 452–53. Because there is no dispute that King was replaced, she has satisfied the fourth element of a prima facie case.

■ As to the second element, WiseWay argues that King has presented no evidence (other than her own self-serving testimony) that she was performing her job satisfactorily, and so has not presented a prima facie case. A plaintiff's own assessment of his or her qualifications can be enough to establish a prima facie case, however. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 923 n. 6 (7th Cir.1988). More importantly, in a case such as this, where the employer's justification of its decision is that the employee was not performing his or her job duties satisfactorily, the inquiry collapses into one issue: is there a question of fact as to whether the employer's justification is false? *Johnson v. City of Fort Wayne, Indiana*, 91 F.3d 922, 936 (7th Cir.1996); *Taylor v. Canteen Corp.*, 69 F.3d 773, 781 (7th Cir.1995). In other words, the question the court must decide on summary judgment is whether the plaintiff has any evidence which would allow a reasonable jury to disbelieve the defendant and instead find that the defendant's actions were the result of intentional discrimination. *Carson*, 882 F.Supp. at 768–69.

■ To explain why a question of fact exists in this case requiring trial, it is sufficient to summarize the parties' evidence, rather than nit-picking all the details. From WiseWay's side of the case, there is ample evidence supporting WiseWay's assertion that WiseWay's Vice President of Merchandising, Patrick O'Malley (with the approval of WiseWay's President, Don Weiss), decided to demote King because she was doing her job poorly.

King had originally been promoted by Weiss sometime in 1990[7] based on the recommendation of King's direct supervisor, Mike Zaucha, the store manager at that time.

---

district court's judgments against the four defendants are reversed.")

5. WiseWay's mistake is understandable, in view of other demotion/discharge cases articulating the elements in the same way. *See, e.g., Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994).

6. In *Roper v. Peabody Coal Co.*, 47 F.3d 925, 927 (7th Cir.1995), the fourth element was revised to now be "younger employees were treated more favorably."

7. The parties have not been more specific about the date.

Sometime later in 1990 [8] after the promotion Zaucha gave King a generally unfavorable written performance evaluation. King dep. at 33–34. Although that was the only formal written performance evaluation King received during her tenure as manager, King dep. at 191, O'Malley himself spoke to King about his dissatisfaction with her performance on several occasions. O'Malley dep. at 36–38. Finally, in April 1995, O'Malley made the decision to demote King. O'Malley dep. at 27–29, 32.

Considering other evidence in the record, however, the picture could be seen differently. The poor written performance evaluation, using WiseWay's 1990 date, came more than four years prior to King's demotion. Other than that poor evaluation, King says that no one from WiseWay ever informed her that her performance was not up to WiseWay's expectations. King dep. at 144, 190.

In September or October 1994, after King had served as front-end manager for approximately four years under Zaucha and Zaucha's replacement, Tom Newman, Rick Green replaced Newman as store manager and King's supervisor. In King's opinion, from the beginning Green treated her in ways that frustrated her ability to do her job. King dep. at 74–75. For example, he consistently scheduled her to work as a cashier from 10:00 a.m. to 7:00 p.m., which would not allow her to perform her managerial functions, King dep. at 66; refused to allow her to attend training, but allowed her assistant, a male, to attend, King dep. at 64; refused to provide her with information she needed to manage cashiers, King dep. at 65; and refused to let her attend a meeting that she had asked be scheduled with the cashiers. King dep. at 65.

In February 1995, only two months before King's demotion, King's spouse, Jim King, stopped by the store to pick up a cashier's schedule to bring home to Mrs. King. Mr. King overheard (allegedly, but assumed true for summary judgment purposes) Green remark to another WiseWay employee, Rick Weiss, "I don't need any female managers on the front end" and "well I don't think she can handle the schedule. She's a female." J. King dep. at 9, 10, 35–36. Before making the decision to demote King, Patrick O'Malley spoke with all of the store managers King had worked for, including Green. O'Malley dep. at 41.

Drawing all reasonable inferences in King's favor, as is required on summary judgment, casts doubt on whether O'Malley's dissatisfaction with King was the real reason for King's dismissal. It would be reasonable for a jury to conclude that O'Malley dismissed King because that was what Green, the store manager, wanted. In other words, even if O'Malley honestly believed that King's deficiencies warranted dismissal, that was because Green had "poisoned the well" because he did not want a female manager in his store. In that circumstance, Green's discriminatory animus would in effect be the real reason for King's demotion. See *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1459 (7th Cir.1994) (collecting cases).

■ Lending support to the inference that Green's animus toward female managers tainted O'Malley's decision is the timing of that decision. The timing of an action can support an inference of causation. *Dey*, 28 F.3d at 1458. It seems odd that O'Malley would leave King in the position of front-end manager for four-and-a-half years if he believed that she was not performing the job satisfactorily. After that period in the position, King's demotion six months after Green became her manager supports an inference that Green's opinion of King catalyzed the decision. This is further borne out, despite WiseWay's protests that Green had nothing to do with O'Malley's decision, by O'Malley's equivocal answer to the direct question whether Green had recommended to O'Malley that King be demoted: "Can't say whether or not he recommended dismissal or a reduction, but he was not happy with her performance, either." O'Malley dep. at 41.

■ This all assumes, of course, that Green's comments overheard by King's

---

**8.** The date asserted by WiseWay in its motion. There is also evidence in the record that the evaluation was in 1992.

spouse are evidence of Green's discriminatory animus, and under the "stray remarks" doctrine that has developed in this circuit, *see Fuka v. Thomson Consumer Electronics,* 82 F.3d 1397 (7th Cir.1996), that is a close question. While not direct evidence of discrimination, in the appropriate circumstances under the indirect method burden-shifting method of proof the remarks may be evidence of pretext. *Fuka,* 82 F.3d at 1406. In the court's view, Green's remarks, in conjunction with the other evidence, make it reasonable for the factfinder to draw an inference of discrimination. As already noted, it would be fair to infer that Green's input was important to the decision, and Green's remarks came only two months before King's demotion. Also suggesting a relationship between the remarks and King's demotion are the circumstances under which the remarks were made. It would be fair to infer that Green's comments resulted from irritation at King's spouse picking up a schedule for King, and so, rather than being "stray," the comments were directed specifically at King.

In sum, while King's evidence is certainly less than compelling, there is evidence from which a jury could infer that WiseWay's demotion decision resulted from Green's intentional discrimination against her on account of her gender. *See Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353 (7th Cir.1996). Whether that is true, or WiseWay's explanation is to be believed, is a question only a jury may decide, and so WiseWay's motion for summary judgment on King's Title VII claim must be **DENIED.**

WiseWay has also moved for summary judgment on King's state-law claim for intentional infliction of emotional distress. Indiana, like most states that recognize this tort, predicates liability on conduct that is "extreme and outrageous" and "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Conwell v. Beatty,* 667 N.E.2d 768, 777 (Ind.Ct.App.1996) (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)). Plaintiff asserts that Green's conduct was extreme and outrageous in the following particulars:

Green constantly sabotaged Plaintiff's efforts to perform her job by scheduling her improperly, not allowing her to perform her job duties, not treating her as a manager, not giving her the information she needed, never communicating with her, never training her, forcing her to work without breaks, and making derogatory comments to others about her and her abilities.

Plaintiff's Response Memorandum at (unnumbered) 21. This conduct, as illuminated by the evidence of record, is simply not conduct that is extreme and outrageous enough to constitute the tort. *Cf. Harriston v. Chicago Tribune,* 992 F.2d 697, 703 (7th Cir.1993) (applying Illinois law). WiseWay is entitled to summary judgment on King's claim for intentional infliction of emotional distress.

For the forgoing reasons, WiseWay and Green's motion for summary judgment is **GRANTED IN PART and DENIED IN PART.** Only King's Title VII claim shall proceed to trial.

**SO ORDERED.**