Annette P. DRAGO, Plaintiff,

v.

AETNA PLYWOOD, INC., a Delaware corporation, Defendant.

No. 96 C 2398.

United States District Court, N.D. Illinois, Eastern Division.

March 27, 1997.

Jill A. Dougherty, Richard H. Ferri, John Carmen Sciacotta, Kelly, Olson, Rogan and Siepker, Chicago, IL, for Plaintiff.

Dean A. Dickie, Kathleen H. Klaus, D'Ancona & Pflaum, Chicago, IL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

HART, District Judge.

Plaintiff Annette Drago was formerly employed by defendant Aetna Plywood, Inc. Plaintiff alleges she was subjected to sexual harassment, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Defendant has moved for summary judgment dismissing all claims.[1]

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the non-movant and all factual disputes resolved in favor of the nonmovant. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *Jakubiec v. Cities Service Co.*, 844 F.2d 470, 471 (7th Cir.1988). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Id.* at 473. The non-movant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant need not provide affidavits or deposition testimony showing the non-existence of such essential elements. *Id.* at 324, 106 S.Ct. at 2553. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476–77 (7th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); id. at 325, 106 S.Ct. at 2553–54 ("the burden on the moving party may be discharged by 'show-

ing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992).

In support of her sexual harassment claim, plaintiff relies on both *quid pro quo* and hostile work environment theories. "*Quid pro quo* harassment 'occurs in situations where submission to sexual demands is made a condition of tangible employment benefits.' " *Ellerth v. Burlington Industries, Inc.*, 102 F.3d 848, 855 (7th Cir.1996) (quoting *Bryson v. Chicago State University*, 96 F.3d 912, 915 (7th Cir.1996)). The Seventh Circuit has accepted the description of *quid pro quo* harassment contained in EEOC regulations:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexu-

---

1. Defendant moves to strike certain exhibits that plaintiff provided in response to the summary judgment motion. That motion is denied in that no exhibit will be stricken. However, to the extent any exhibit fails to contain evidence that is admissible for summary judgment purposes, such inadmissible evidence will not be considered. Defendant should have included such contentions in its reply brief or response to plaintiff's Local Rule 12(N) Statement. A separate motion and brief was inappropriate.

al harassment when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

*Bryson,* 96 F.3d at 915 (quoting 29 C.F.R. § 1604.11(a)). The employee must suffer a materially adverse employment action. *Bryson,* 96 F.3d at 916; *Butta–Brinkman v. FCA International, Ltd.,* 950 F.Supp. 230, 235 (N.D.Ill.1996); *Ammons–Lewis v. Metropolitan Water Reclamation District of Greater Chicago,* 1997 WL 80949 *3–4 (N.D.Ill. Feb.21, 1997).

▇ *Quid pro quo* harassment may be shown by proof of the following five elements: (1) plaintiff is a member of a protected group; (2) unwelcomed sexual advances were made; (3) the harassment was sexually motivated; (4) plaintiff's reaction to the advances negatively affected a tangible aspect of her employment; and (5) *respondeat superior* has been established. Defendant does not dispute that (1) and (5) are satisfied: Drago is female and the alleged perpetrator (Jeffrey Davis) is defendant's chief executive officer and sole shareholder. To the extent there is sufficient evidence of sexual advances, there is also no contention that (2) is unsatisfied because any advances were welcomed. Defendant does contend there is no sufficient evidence that any harassment was sexually motivated and also contends there is insufficient evidence of any detrimental effect on plaintiff's employment.

▇ Defendant contends that plaintiff's concession that Davis did not "expressly demand that they have sex" precludes any successful *quid pro quo* claim. *See* Pl. Response to Rule 12(M) Statement ¶ 35. A request for sexual favors, however, may be subtle or implicit. *See Bryson,* 96 F.3d at 915 (quoting 29 C.F.R. § 1604.11(a)); *Doe v. Taylor Independent School District,* 975 F.2d 137, 149 (5th Cir.1992), *cert. denied,* 506 U.S. 1087,

113 S.Ct. 1066, 122 L.Ed.2d 371 (1993). There is no requirement that the offending party *expressly* state that sexual favors are required in order to receive or retain a job benefit.

Resolving all genuine factual disputes in plaintiff's favor, the facts are as follows. Drago first came to work at Aetna in 1988, beginning as Davis's administrative assistant. In 1991, Drago began a quick succession of promotions. In June 1991, she was promoted to Human Resource's Director. Six months later she was promoted to Associate Vice–President. In January 1993, she was promoted to Executive Vice–President, though the promotion was not announced until June 1994. In that position, plaintiff apparently was second only to Davis. In May 1995, Davis fired plaintiff.

Plaintiff concedes that Davis never expressly stated that having a sexual relationship was required in order to receive or retain any of the promotions. However, in September 1991, during discussions of salary increases, Davis informed plaintiff that he had fallen in love with her and was obsessed with her. He told her he wanted to "make love" to her and inquired as to whether she had similar feelings for him. Plaintiff flatly rejected Davis's overtures. On a number of occasions over the next several years, Davis made references to whether they would ever be able to get together and that he would be waiting for her. Davis attempted to give plaintiff a diamond tennis bracelet, which she refused, saying it was a token of his feelings and that he wanted them to grow closer together. During this time period, Davis frequently touched her shoulder and back. On one occasion, Davis attempted to kiss plaintiff and on another occasion tried to hold her hand. Davis would also arrange for them to frequently do business together and have lunch together, without other employees present. Davis once told plaintiff he would like to see her without makeup[2] and, on

**2.** Plaintiff omitted to mention this incident when she was deposed and asked to recite all incidents. However, she did recite a number of other incidents and the addition of this incident is not directly contradictory of other testimony. This is not the type of statement in an affidavit that must be ignored because contrary to deposition testimony. It is impeachable testimony which the jury can choose to believe or not believe. *Cf. Keppler v. Hinsdale Township High School District 86,* 715 F.Supp. 862, 864 n. 1 (N.D.Ill.1989). But even if not properly consid-

another occasion, asked her if her breasts had become bigger during her pregnancy. One day at a fruit market, Davis recited a poem comparing eating a mango to eating a breast.

Finally, in early 1995, Davis asked plaintiff if there was any chance they were ever going to "get together," meaning become sexually involved. Plaintiff responded that it would "never" happen. Davis became teary eyed and went to the washroom to compose himself. When he came back out, he said he was never going to mention it again. Two months later, Davis informed plaintiff that, there being no chance of them getting together, he was transforming his love into hate. On May 8, 1995, Davis called plaintiff into his office, said his wife was a "bitch," and asked plaintiff to close the door and stay with him. When plaintiff refused, Davis leaned across his desk and said, "What's the matter? Are you afraid I'm going to rape you?" Plaintiff was stunned and ran out of the office. Ten days later, Davis fired plaintiff.

There is clearly sufficient evidence to infer that Davis became disenchanted with plaintiff and discharged her because he finally realized that she was never going to succumb to his attempts to develop a sexual relationship. There is sufficient evidence of sexually motivated harassment and a tangible effect on plaintiff's employment—she lost her job. The *quid pro quo* sexual harassment claim must stand.

A hostile work environment sexual harassment claim requires proof of harassment "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Pasqua v. Metropolitan Life Insurance Co.,* 101 F.3d 514, 516 (7th Cir.1996) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)). Factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Saxton v. American Telephone &*

*Telegraph Co.,* 10 F.3d 526, 534 (7th Cir. 1993) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993)). The work environment must be both objectively hostile or abusive— that is conditions that a reasonable person would find to be hostile or abusive—and subjectively hostile or abusive in that the victim perceived it as such. *Saxton,* 10 F.3d at 534 (quoting *Harris,* 510 U.S. at 21–22, 114 S.Ct. at 370–71).

■ Plaintiff relies on the previously summarized facts as evidence of a hostile environment. She also points to occasions of short duration when Davis had sexually explicit art objects in the office. Davis also asked plaintiff a number of times if she was "sleeping with" another employee.

The evidence is sufficient for a jury to find that the harassment was a continuing violation from September 1991 until plaintiff's discharge in May 1995. During that three and one-half year period, Davis frequently touched plaintiff and frequently arranged to be alone with her. He frequently attempted to develop a more personal relationship with plaintiff. On a number of occasions, he directly stated he wanted to have a sexual relationship with plaintiff. Resolving all evidentiary disputes in plaintiff's favor, the conduct is sufficiently egregious to satisfy the objective component. Plaintiff's testimony as to her subjective reaction also satisfies the subjective component. Summary judgment with respect to the hostile work environment claim will be denied.

■ Plaintiff contends retaliation occurred because she opposed sexual harassment during a May 9, 1995 meeting with Davis. A necessary element of such a claim is that plaintiff engaged in statutorily protected activity. *Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d 469, 479 (7th Cir.1995). Plaintiff points to pages 630–45 of her deposition, her notes of the May 9 meeting (Pl.Exh. Q), and ¶ 23 of defendant's Local Rule 12(M) Statement. None of these documents support that, at the May 9 meeting, plaintiff

ered on summary judgment, there is other sufficient evidence of harassment.

engaged in statutorily protected activity.[3] Plaintiff apparently relies on statements to Davis that he had scared all the women in attendance at the meeting and the fact that plaintiff mentioned Davis's retort, "Are you afraid I'm going to rape you?" Plaintiff's own testimony and notes support that the gist of the meeting with Davis was to express concern for his mental health and ability to run the company and suggest he needed help. Telling him women in the office were fearful of his behavior is not telling him that he was committing sexual harassment or other behavior violative of Title VII. Mere reference to the rape statement also does not raise such issues. The Count II retaliation claim will be dismissed.

■ Last, defendant argues there is inadequate evidence to support a claim she was discharged because of gender discrimination distinct from the sexual harassment. Defendant contends no case of discrimination can be made because plaintiff cannot point to a similarly situated male who was treated more favorably. Alternatively, defendant contends plaintiff cannot rebut the stated grounds for her termination.

■ The elements of a *prima facie* case of employment discrimination will vary in accordance with the type of employment practice involved and other circumstances of the case. *See Collier v. Budd Co.,* 66 F.3d 886, 890 (7th Cir.1995); *Feigl v. Englewood Electrical Supply Co.,* 1996 WL 396092 *3 (N.D.Ill. July

12, 1996). Ordinarily, to make out a *prima facie* case of discriminatory discharge, a plaintiff must show that he or she (1) is in a protected group, (2) was performing up to the employer's legitimate expectations, and (3) was discharged. Originally, the usual fourth element was that the employer then sought a replacement. *See Oxman,* 846 F.2d at 453. Recognizing that the fourth element could not be satisfied in a reduction-in-force case, *Oxman* holds that a discharged employee can instead show that others not in the protected group were treated more favorably.[4] *See id.* at 453–55. *See also Collier,* 66 F.3d at 890–91. Although some cases refer only to the replacement element and some only to the favorable treatment element, either may be sufficient depending on the circumstances of the case.[5] *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 864 (7th Cir.1996); *Gadsby v. Norwalk Furniture Corp.,* 71 F.3d 1324, 1331–32 (7th Cir.1995); *Collier,* 66 F.3d at 890–91; *Oxman,* 846 F.2d at 453–55; *King v. Wiseway Super Center, Inc.,* 954 F.Supp. 1289, 1292–93 (N.D.Ind. 1997); *Saeli v. Motorola Inc.,* 917 F.Supp. 589, 593 (N.D.Ill.1996); *Feigl,* 1996 WL 396092 at *3; *Brown v. Oscar Mayer Foods Corp.,* 1996 WL 99412 *2 (N.D.Ill. March 5, 1996). Also, any other factor from which it can logically be believed that a decision rests on a legally forbidden ground can be substituted for the fourth element. *See Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996) *(per curiam ); Chiaramonte v.*

---

3. Since plaintiff's proof otherwise fails, it is unnecessary to determine whether the notes are evidence that may properly be considered on summary judgment.

4. In age discrimination cases, it has been held that a sufficiently younger employee is an appropriate person to compare even if the comparison employee is still over 40 and therefore also in the protected group. *See O'Connor v. Consolidated Coin Caterers Corp.,* — U.S. —, —, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 864 (7th Cir.1996). Such a distinction does not arise in sex discrimination cases.

5. The cases are inconsistent in stating whether any replacement is sufficient or if the replacement must be outside the protected group (or sufficiently younger in age discrimination cases). Compare *Wohl v. Spectrum Manufacturing, Inc.,* 94 F.3d 353, 358 (7th Cir.1996), *Piraino v. International Orientation Resources, Inc.,* 84 F.3d 270,

273, 276 (7th Cir.1996); *Mills v. First Federal Savings & Loan Association of Belvidere,* 83 F.3d 833, 843 & n. 6 (7th Cir.1996), *Sample v. Aldi Inc.,* 61 F.3d 544, 548 (7th Cir.1995), and *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994) with *O'Connor,* — U.S. at —, 116 S.Ct. at 1310, *Denisi,* 99 F.3d at 864, and *Gadsby,* 71 F.3d at 1332. See also *Kralman v. Illinois Department of Veterans' Affairs,* 23 F.3d 150, 153 n. 2 (7th Cir.), *cert. denied,* 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994). *O'Connor* appears to hold that the replacement must be outside the protected group (or sufficiently younger) and that is what the most recent Seventh Circuit case (*Denisi*) states. However, *Wohl, Piraino,* and *Mills* were all decided after *O'Connor.* Neither *Wohl* nor *Piraino* cites *O'Connor.* *Mills* cites *O'Connor* and states it was unnecessary in *Mills* to resolve the particulars of the fourth element.

*Fashion Bed Group Inc.,* 932 F.Supp. 1080, 1087 (N.D.Ill.1996).

Plaintiff contends that the first three elements are sufficient. *Oxman,* 846 F.2d at 453, expressly states otherwise. *See also Kralman v. Illinois Department of Veterans's Affairs,* 23 F.3d 150, 154 n. 3 (7th Cir.), cert. denied, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994); *Jennings v. Uniroyal Plastics, Inc.,* 1989 WL 125601 *5 (N.D.Ind. Jan.25, 1989); *Nellis v. Service Web Offset Corp.,* 695 F.Supp. 398, 401 (N.D.Ill.1988). *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), and *Carson, supra,* are not to the contrary. *O'Connor* holds that, in age discrimination cases, replacement by a person outside the protected group (that is a person 40 or younger) is not a proper fourth element of the *prima facie* case. Instead, the replacement must be sufficiently younger; the key is the number of years of difference in age, not whether the replacement is outside the protected age group. When *O'Connor,* —— U.S. at ——, 116 S.Ct. at 1310, states "being replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case," it does not mean that replacement cannot be a required element, but means in age discrimination cases age, not the protected class, is the proper focus. Also implicit in *O'Connor* is that another set of factors from which an inference of discrimination may logically be drawn can be substituted for the usual factors. See id.

In *Carson,* a discharged white employee was replaced by another white employee. Relying in part on *O'Connor, Carson* states:

> An employee may be able to show that his race or another characteristic that the law places off limits tipped the scales against him, without regard to the demographic characteristics of his replacement.... The question instead is whether the plain-tiff has established a logical reason to believe that the decision rests on a legally forbidden ground. That one's replacement is of another race, sex, or age may help to raise an inference of discrimination, but it is neither a sufficient nor a necessary condition.... Any demonstration strong enough to support a judgment in the plaintiff's favor if the employer remains silent will do, even if the proof does not fit into a set of pigeonholes.

*Carson,* 82 F.3d at 159. The statement that being replaced by a person of another race, sex, or age is not a "necessary" condition does not mean that the fourth element has been eliminated and the first three elements are sufficient. It just means that other sufficient factors may be used to establish the *prima facie* case.[6]

For the reasons stated above, the holding in *Shivers v. Honeywell, Inc.,* 933 F.Supp. 705, 709 (N.D.Ill.1996), that the first three elements are a sufficient *prima facie* case in light of *O'Connor* and *Carson,* will not be followed. To make out a *prima facie* case of a discharge based on sex discrimination, a female plaintiff must show the standard three elements plus that she was replaced by a male or treated less favorably than a comparable male. Alternatively, she can show another set of factors from which a discriminatory discharge can reasonably be inferred.

There is no contention that plaintiff has failed to satisfy the first three elements. The burden is on plaintiff to show that she can satisfy the fourth element or some alternative *prima facie* case. She does not contend she can show a comparable male was treated more favorably. Neither party points to any evidence as to whether plaintiff was replaced. Plaintiff does not contend she can satisfy an alternative *prima facie* case or that she has direct evidence of sex discrimination. Since plaintiff has not satisfied her

---

**6.** The statement that replacement by a person of another race, sex, or age is not a "sufficient" condition does not mean that the standard four elements are no longer a viable *prima facie* case. The court apparently meant it is not sufficient by itself, the other three elements (or an appropriate substitute) must also be shown. In *Carson,* the standard *prima facie* case otherwise could not be satisfied because plaintiff was not performing up

to her employer's legitimate expectations. It was her contention that a black worker who was even less qualified should have instead been discharged. *See Carson,* 82 F.3d at 159. In any event, subsequent to *Carson,* Seventh Circuit cases continue to apply the standard four-element *prima facie* case. *See Denisi,* 99 F.3d at 864; *Wohl,* 94 F.3d at 358; *Piraino,* 84 F.3d at 273, 276; *Mills,* 83 F.3d at 843 & n. 6.

burden, the Count III claim for a discharge based on gender discrimination will be dismissed.

IT IS THEREFORE ORDERED that defendant's motion to strike certain exhibits to plaintiff's response [83–1] is denied. Defendant's motion for summary judgment [68–1] is granted in part and denied in part. Counts II and III are dismissed. In open court on May 8, 1997 at 9:15 a.m., the parties shall present an original and copy of a top-bound, final pretrial order in full compliance with Local Rule 5.00.