Robert DENISI, Plaintiff–Appellant,

v.

DOMINICK'S FINER FOODS, INC., Defendant–Appellee.

No. 95–3345.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1996.

Decided Nov. 1, 1996.

Burr E. Anderson (argued), Anderson & Franklin, Chicago, IL, for Plaintiff–Appellant.

Brian W. Sill and Mark A. Lies, II, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Robert Denisi brought suit against Dominick's Finer Foods, Inc. ("Dominick's") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* He alleged discriminatory termination from his position as store manager. The district court granted Dominick's motion for summary judgment. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

Robert Denisi was born on October 27, 1947. He began working for Dominick's at the age of seventeen and worked his way up to store manager. After working twenty-eight years at Dominick's, twelve of those years as store manager, the store discharged him on February 3, 1993. In this ADEA action, the company justifies its decision on the ground that Mr. Denisi had a "history of poor job performance" and had violated the company policy that no out-of-date or out-of-code product be sold in any Dominick's store. Mr. Denisi claims that this characterization of his employment record is pretextual. In determining whether there is a genuine issue of triable fact, we review, de novo, the summary judgment record in the light most favorable to Mr. Denisi, the nonmoving party. Fed.R.Civ. P. 56(c).

### 1.

Mr. Denisi's focus on his employment history begins in March 1991. At that time he was transferred from the Dominick's store in Lincolnwood to the one in Morton Grove. In his view, the transfer was a routine one; he was asked to address declines in sales, cleanliness and employee morale that the Morton Grove store was experiencing. According to Dominick's, however, the transfer resulted from Mr. Denisi's "minimally acceptable" performance ratings in 1990 and his performance problems in the Lincolnwood store. Dominick's claims that management believed that the move would give Mr. Denisi a fresh start at a store in good condition. The memorandum of February 28, 1991, from Michael Leitner, the Director of Area Operations ("DAO"), who was Mr. Denisi's immediate supervisor at that time, suggests that Mr. Denisi had been told to attain certain standards with respect to store conditions and profits in the Lincolnwood store and that he had not succeeded:

The current opportunities at Store # 72 [the Lincolnwood store] have not completely been addressed or solved. Your transfer from Store # 72 does not relinquish you of the current challenges you must address. Store conditions and gross margins have not reached the level we have both agreed upon earlier this year. You, as the store manager must continue to take the leadership role. Your appraisal of your department heads have shown you have the knowledge and ability to perform in this role. I now ask that you remain the leader in a consistent fashion.

Store # 9 [the Morton Grove store] presents a challenge of a different nature. The store's current condition will be reviewed with you after the first week. I will insist that current levels of achievement be kept and additional opportunities be analyzed.

I'm pledging full merchandiser support, however, your interaction and desire must also be available.

R.39, tab 9.

In May 1992, DAO Leitner was replaced by Charles Rangonese as Mr. Denisi's supervisor. After the 1992 mid-year evaluation,

DAO Rangonese asked Mr. Denisi to draft an "action plan." Such a plan is required of an employee whose performance is minimally acceptable; it is intended to raise his performance level. Mr. Denisi submitted his plan around the middle of September. He asserts that neither the DAO nor the human resources representative discussed his plan with him. Two months later, the DAO responded merely by asking Mr. Denisi to rewrite his objectives, specifying how the goals in his action plan would be accomplished. Mr. Denisi asserts that he submitted a revised plan. He also evaluated his own overall performance as below meeting Dominick's requirements. He now submits, however, that his self-evaluation contained arithmetic errors, and that he should have concluded that he met Dominick's requirements.

Dominick's description of the situation in mid-1992 differs from Mr. Denisi's. Dominick's states that, in the summer of 1992, DAO Rangonese warned Mr. Denisi that his position as store manager was at risk and asked him to establish performance objectives in his action plan. The DAO returned Mr. Denisi's first draft and told him to make his plan more specific. Human Resources Representative Erlemann critiqued Mr. Denisi's action plan and expressed concern about his job performance, but also offered counseling. A co-manager, brought in to help Mr. Denisi in July 1992, improved conditions in the Morton Grove store during his tenure, but things worsened when he left in December. On several occasions during 1992, John Mattingly, the grocery merchandiser, saw unacceptable conditions in many parts of Mr. Denisi's store and discussed with him such problems as untidy store shelves that were not straightened nightly, dirty shelves and expired or out-of-code products. According to Mattingly, Mr. Denisi had no sense of urgency or desire to cure the problems.

On January 23, 1993, Mattingly again visited Mr. Denisi's store. He found several sale items empty and out of stock, store shelves not properly straightened and blocked, and more than $1,000 worth of out-of-code dairy products in the dairy cooler. Mattingly and Erlemann met with Mr. Denisi later that day. They discussed Mr. Denisi's past performance problems, his failure to walk the store daily to ensure that it was ready for business, and the condition of his dairy cooler. According to Dominick's, Mr. Denisi admitted that he had not inspected the dairy cooler in months, that he was not walking the store on a daily basis, and that he could not motivate himself to do his job. According to Mr. Denisi, however, the out-of-code product was the co-manager's problem because that individual was the grocery department manager and Mr. Denisi was the store manager. Mr. Denisi also explained that it was not surprising that some product would eventually go out of code before it was sold. In this instance, Mr. Denisi had received a substantial shipment of sour cream from the warehouse shortly before the expiration date of January 23, 1992, and could not sell it before that date. He notified Mattingly of the situation and asked for credit for the items he could not sell. The out-of-code product was being stored in the back cooler; however, a few packages were on the shelves available to consumers.

After the meeting with Mattingly and Erlemann, Mr. Denisi was sent home and told to begin his vacation. Shortly after January 23, 1993, Erlemann and Dominick's administrators met to consider Mr. Denisi's situation. On February 3, 1993, they told Mr. Denisi that his employment was terminated, with ten weeks of severance pay and outplacement services to assist him in finding a new job. He was replaced by a younger manager.

2.

Dominick's conducts a semiannual appraisal of its employees' work performances. Mr. Denisi and Dominick's clearly disagree about the acceptability of Mr. Denisi's work performance in the years before he was discharged. They also interpret differently the results of Mr. Denisi's ratings by his supervisors.

Dominick's employs a performance rating scale to rate its retail managers: Superior, Exceeds Requirements, Meets Require-

ments,[1] Marginal,[2] and Unsatisfactory. Each ranking could be qualified by a "+" or "-." Mr. Denisi's ratings for his 1990 performance were all substandard—either "meets requirements minus" "MR-" or Marginal "M"[3]. In the 1991 appraisal there was a slight improvement; the DAO rated Mr. Denisi's performance closer to "MR." Nevertheless, Mr. Denisi's mid-year 1992 rating was again below performance level. At that time, DAO Rangonese told Mr. Denisi that his position as a store manager could be jeopardized by those ratings. Human Resources Representative Erlemann counseled Mr. Denisi about improvements in his performance and a co-manager was brought into the Morton Grove store. At the end of 1992, Mr. Denisi's personal performance was rated as "below meets requirements" and "marginal."[4] At oral argument Mr. Denisi's counsel stated that Mr. Denisi's average rating, "MR-," was below "meets requirement" but above "marginal." He contends that such ratings are still within the satisfactory level of performance.

### 3.

Mr. Denisi also submits that two younger managers similarly situated were given better treatment. John Sabella, born in 1957, received an "MR-" rating in December 1992 and an "M" on his mid-year 1993 evaluation. Jorge Rodriguez, born in 1958, received "MR-" ratings in 1992 and mid-year 1993. Like Mr. Denisi, Sabella and Rodriguez received letters from Erlemann in September 1992 expressing concern about their perfor-

mance as managers. In March 1993 Sabella received another letter informing him that he was on probation. In August, with performance still below "MR," he was given thirty days to improve; he was eventually terminated. In March 1993, Rodriguez was also notified by letter that he was on probation. In February 1994, after a freezer broke down in the deli department of his store, Rodriguez went home. As a result, he was suspended for a week and warned that a similar occurrence could result in termination. In June 1994, with his performance still below "MR," Rodriguez was given the choice of termination with ten weeks severance pay, a lower position, or reassignment to another store with probation.

### B. *Proceedings in the District Court*

In an extremely brief oral rendition, the district court granted Dominick's motion for summary judgment. The court concluded that the record established that Mr. Denisi was terminated "essentially because he was not doing a very good job and in particular because about a thousand dollars worth of out-of-code product was found in his dairy cooler." R.47 at 2. The court considered that, in light of Mr. Denisi's admissions that his work was below the "meets requirements" standard and that out-of-code product was in the cooler, it was difficult to see how Mr. Denisi could ever establish that Dominick's reasons were pretextual. The court also found that Mr. Denisi's challenges

---

1. Dominick's Retail Management Year End Performance Appraisal Form defines the rating of "meets requirements" in this way:

   Produces the expected results determined by the organization. Meets *all* objectives in terms of quality and quantity of work. Effectively cooperates with all departments and across the organization. [P]roductively leads the unit operation and continues to meet the standards and requirements of the position. Can develop and train others, and is viewed as an effective leader.
   R.35   tab 15, at 5.

2. Dominick's Appraisal Form also defines "marginal":

   Performance and results are minimally acceptable. Some objectives may be achieved, while others are not. Accomplishments and focus are below what is necessary to ensure the unit meets all requirements. Attention to detail

may be missing. Work rate and/or knowledge and skills must improve. To continue in position, a timed action plan to raise performance to the level of meets requirements must be developed and successfully completed.
R.35   tab 15, at 5.

3. DAO Leitner gave Mr. Denisi a "MR-" or "M" on all aspects of his 1990 performance. In a self-evaluation, Mr. Denisi gave himself similar or slightly higher marks for that period.

4. Mr. Denisi's year-end 1992 ratings sheets reflect overall ratings thus:

| | |
|---|---|
| Administrative Performance | MR-- |
| Personal Performance | M |
| Management Performance | MR-- |

The operating results also reflect negative profits for the year.

to the adequacy of Dominick's recordkeeping were not relevant in light of his own concessions about the quality of his performance. Turning to Mr. Denisi's claim that other performance-deficient managers were treated more favorably, the court determined that Mr. Denisi had not established comparability. The court concluded that, "given Denisi's admissions in his deposition, he has absolutely no chance of persuading any trier of fact that the grounds for his discharge were related to his age." R.47 at 4. It therefore granted summary judgment to Dominick's.

## II

## DISCUSSION

### A.

We review de novo the district court's grant of summary judgment to Dominick's. In scrutinizing the record made by the parties before the district court, we draw all inferences in the light most favorable to the nonmoving party. We affirm a summary judgment only if "there is no issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under the ADEA, employers are prohibited from discriminating against individuals forty years of age or older in their employment. 29 U.S.C. § § 621(b), 631(a). An ADEA plaintiff must establish that he would not have been treated adversely by his employer but for the employer's motive to discriminate against him because of his age. *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 680 (7th Cir.1996) (citing cases). When an employee has no direct evidence of age discrimination, he may follow the burden-shifting approach of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to create an inference of age discrimination.

> Under this approach, the plaintiff has the burden of making out a prima facie case of discrimination. If this burden is met, the employer must articulate a legitimate, nondiscriminatory reason for the termination. Once the employer has offered such a rea-

son, the plaintiff "must raise some doubt as to the genuineness of the given reasons for a termination."

*Smith v. Cook County,* 74 F.3d 829, 831 (7th Cir.1996) (quoting *Anderson v. Stauffer Chem. Co.,* 965 F.2d 397, 403 (7th Cir.1992)). To make out a prima facie case, the plaintiff must show that he was in the protected age group, was performing his job satisfactorily, and was discharged. The plaintiff must also establish that younger employees situated similarly to the plaintiff were treated more favorably. *See Taylor v. Canteen Corp.,* 69 F.3d 773, 779 (7th Cir.1995). An ADEA plaintiff also can show that he was replaced by someone "substantially younger," even if that replacement is not outside the protected class. *O'Connor v. Consolidated Coin Caterers Corp.,* — U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *see also Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996) (discussing *O'Connor*).

Once the plaintiff establishes a prima facie case, there is a rebuttable presumption of age discrimination, see *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993), and the burden-shifting analysis is followed. The burden first shifts to the employer to articulate a non-discriminatory reason for discharging the plaintiff. If the employer succeeds, the burden shifts back to the plaintiff to show that the employer's proffered explanation is pretextual. "At all times, however, the plaintiff retains the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her based upon her age." *Weisbrot,* 79 F.3d at 681 (citing *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747); *see also Mills v. First Fed. Sav. & Loan Ass'n,* 83 F.3d 833, 843 (7th Cir.1996).

Here, as in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employee was not performing in an acceptable manner.[5] Mr. Denisi submits that he has presented a prima

---

5. *See Fuka v. Thomson Consumer Elecs.,* 82 F.3d 1397, 1404 (7th Cir.1996).

facie case of age discrimination and that Dominick's has failed to articulate a legitimate reason for its termination of his employment. In his view, there is an issue of material fact as to whether Dominick's reasons for his termination are pretextual. An employee may survive a motion for summary judgment by "produc[ing] evidence from which a rational factfinder could infer that the company lied about its proffered reasons for his dismissal," *Courtney v. Biosound, Inc.*, 42 F.3d 414, 424 (7th Cir.1994), or that the company's proffered reasons do not represent the truth, *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir.1995). See *Weisbrot*, 79 F.3d at 683 (discussing this circuit's case law concerning summary judgment standards after *Hicks*).

### B.

There is no question that Mr. Denisi is within the protected over-forty age group and that he was terminated. The district court believed that Mr. Denisi probably had fallen short of proving a prima facie case because he had admitted that he had failed to perform according to his employer's legitimate expectations—he had conceded that his ratings were, on the whole, below the "meets requirements" level and that his dairy cooler was filled with out-of-date product. On appeal, Mr. Denisi insists that he did not admit that he failed to meet Dominick's requirements. In fact, he submits that he was meeting Dominick's expectations with a rating of "MR –," for that rating meant that he was still within the "meets requirements" range rather than "marginal."

### 1.

■ Our review of the record indicates that Mr. Denisi's performance evaluations reflect a mediocre to poor performance from at least 1991, when he was transferred to the Morton Grove store. At the time of his termination, his performance was rated

"MR," below acceptable standards, or "M", marginal. Therefore Mr. Denisi cannot establish that he was performing up to Dominick's expectations at the time he was terminated.[6] In addition, the record reflects that Mr. Denisi was made well aware of the situation; he had been warned of his poor performance often and had been required to create an action plan. The 1991 memo from DAO Leitner, discussing the performance levels that Mr. Denisi had not achieved, and the 1992 letter from Erlemann stating that "a great deal of improvement and development is necessary at this time," contradict his claims that he never received formal warnings of poor job performance. Mr. Denisi offered no evidence or deposition testimony to support his contentions that his performance was satisfactory and that he was not responsible, in part or in whole, for admitted incidents like the presence of out-of-code dairy product on shelves. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124–25 (7th Cir.1994) (requiring specific facts showing satisfactory performance in order to create a genuine issue of material fact). In light of the detailed record evidence, Mr. Denisi's deposition testimony, in which he claimed that his job performance was adequate and that he was not warned of persistent performance problems, does not constitute affirmative evidence that can defeat a summary judgment motion. *See Mills*, 83 F.3d at 843–44 (citing cases). Mr. Denisi needed to offer more than his own perception of his performance. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337–38 (7th Cir.1991) ("It is the perception of the decision maker which is relevant.") (quotation omitted).

The district court, in its brief explanation for its ruling, stated that Mr. Denisi would have a difficult time proving pretext on the part of Dominick's, given the admissions he had made. We conclude that the record contains abundant evidence that Mr. Denisi

---

**6.** *See Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 333–35 (7th Cir.1994) (summary judgment granted to employer when employee was given repeated warnings, before termination, about his failure to perform and employee had no evidence that employer's reason was a lie), *cert. denied*, — U.S. —, 115 S.Ct. 2584, 132

L.Ed.2d 833 (1995); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1262 (7th Cir.1993) ("The critical issue is whether [he] was performing well in [his] job at the time of [his] termination."), *cert. denied*, — U.S. —, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994).

was falling short of his employer's legitimate expectations and no evidence other than Mr. Denisi's own statements to indicate that his performance was adequate. Under these circumstances, the district court could have rested its determination definitively on Mr. Denisi's failure to make out a prima facie case.

2.

■ Once an employer presents a legitimate nondiscriminatory reason for an employee's discharge, the burden then shifts to the employee to prove that the reason was pretextual.[7] See Futrell v. J.I. Case, 38 F.3d 342, 346 (7th Cir.1994) (stating that plaintiff must provide "enough evidence from which the jury could have reasonably found that [the employer's] proffered reason for discharging [plaintiff] was a pretext for a willful decision to discharge [plaintiff] on account of his age"). Here, the same evidence that establishes that Mr. Denisi was not meeting his employer's expectations establishes that the employer's explanation for the discharge, poor performance, had a reasonable basis. The reasons given for Mr. Denisi's termination were his history of poor performance and his violation of the company policy forbidding out-of-code products in the store—a policy which explicitly provides for termination. That policy states that no product that has exceeded the manufacturer's "sell-by" or "use-by" date will be sold in Dominick's and that "anyone found violating any of the policies below will be subject to severe disciplinary action, up to and including dismissal!" This company practice, which protects Dominick's customers from the health risks of perishable food spoilage, is a legitimate, nondiscriminatory reason for discharging an employee. Mr. Denisi's view—that the presence of out-of-date product in the dairy cooler, with only a few packages available on shelves for sale to the public, could not support his termination—is, in light of the policy, insupportable. He offered neither evidence nor testimony by other Dominick's employees to bolster his assertion that the incident could not be considered his fault. See Anderson, 13 F.3d at 1125.

3.

The severity of Dominick's response to Mr. Denisi's failings is relevant only if age played a role in that response. See Robinson v. PPG Indus., 23 F.3d 1159, 1164 (7th Cir. 1994). Mr. Denisi's sole submission of age discrimination is based on his assertion that two younger managers with performance problems were treated more favorably than he. Although the district court does not elaborate on its conclusion that the other managers were not comparable to Mr. Denisi, our independent review of the record leads us to agree with that determination.

7. Mr. Denisi attempts to cast suspicion on an evidentiary submission of Dominick's by suggesting that it is not an accurate account of what transpired between Mr. Denisi and his supervisor. Specifically, he contends that DAO Rangonese placed an undated memo in his records, after he was fired, criticizing Mr. Denisi's performance at the end of 1992 as below standard. This document, he suggests, is a manufactured, post-hoc justification for his termination. He also intimates that the actions of various Dominick's employees can be characterized as arranging or orchestrating his termination. For instance, he contends that grocery merchandiser Mattingly had orchestrated his termination by relying on the presence of the out-of-date product that Mr. Mattingly knew to be in Mr. Denisi's store cooler. He also suggests that the corporation's officials were less than thorough in reviewing comprehensively his employee ratings.

An "ADEA case turns upon the credibility of witnesses only when the employee offers specific evidence from which the finder of fact may reasonably infer that the employer's proffered reasons for the adverse job actions did not represent the truth. Summary judgment is proper where no rational factfinder could believe that the employer lied about its proffered reasons for dismissal." Weisbrot, 79 F.3d at 682. In the face of a documented motion for summary judgment, a party cannot rely on a "metaphysical doubt." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Despite Mr. Denisi's intimations, it remains uncontroverted that Rangonese and the other supervisors had ample grounds to find his performance substandard and that out-of-code products were on the shelf for consumer purchase, a situation within the control of Mr. Denisi, not of those whom he accuses, obliquely, of "setting him up." Thus, as we point out in the text, the evidence of record makes it clear that Dominick's had sufficient evidence of poor performance and of a violation of its out-of-code rules to justify its discharge. The submissions of Mr. Denisi simply do not address with sufficient directness the validity of these grounds.

The record does not support the plaintiff's assertion that the two younger managers were similarly situated. *See Smith*, 74 F.3d at 831 (rejecting plaintiff's claim of situational similarity after review of record). Mr. Sabella, a co-manager, was performing poorly during the same time period in which Mr. Denisi's performance was under scrutiny. Like Mr. Denisi, Mr. Sabella was warned of his deficiencies by Erlemann in a letter. He was placed on probation six months later and eventually terminated for his poor performance. R.41 tab B. He did not have a specific incident like the out-of-code dairy products that led to a more rapid termination decision.

Mr. Rodriguez did in fact have an incident on his watch; a freezer broke down in the deli department, and he did nothing to prevent the loss of that food. For this incident he was reprimanded, suspended for a week, and warned that a similar occurrence could result in termination. Dominick's had a reasonable basis for dealing with this incident in a manner different from Mr. Denisi's out-of-code dairy product situation. Rodriguez had a mechanical breakdown of a freezer, a circumstance that occurred suddenly and was beyond his control. Mr. Denisi's situation was within his control. He failed to rotate the dairy product so that no out-of-code items were available for the public to buy. He also failed to remove those items from the back cooler. In this way he violated the written policy of Dominick's, one that announced that termination could result. Mr. Denisi's only concern with regard to the out-of-date food was that Mattingly arrange to reimburse his store's account for the outdated product. Mr. Denisi has failed to show that Dominick's nondiscriminatory reason for terminating him was pretextual.[8]

## Conclusion

The record contains no evidence from which a rational jury could conclude that Mr. Denisi's discharge was based on age discrimination. An examination of the record establishes that Mr. Denisi's history of poor performance was well documented; Mr. Denisi was apprised of his need for improvement. He was also aware that the presence of expired dairy product in his store was grounds for termination. The district court's judgment is affirmed.

AFFIRMED.

---

8. *Cf. Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1405–06 (7th Cir.1996) (finding plaintiff's attempt to liken her situation to that of other employees unavailing).