**Kenneth J. MAIER, Plaintiff–Appellant, Cross–Appellee,**

v.

**LUCENT TECHNOLOGIES, INC., Defendant–Appellee, Cross–Appellant.**

Nos. 96–2902, 96–3040.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1997.

Decided Aug. 11, 1997.

James W. Holman, Marsha H. Cellucci (argued), Cellucci, Yacobellis & Holman, Naperville, IL, for plaintiff–appellant, cross–appellee.

Charles C. Jackson (argued), Gerald L. Pauling, II, Ugne T. Adams, Andrew M. Altschul, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Robert C. Roos, Jr., Lucent Technologies, Inc., Law Dept., Chicago, IL, for defendant–appellee, cross–appellant.

Before RIPPLE, MANION and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Kenneth Maier filed a breach of contract action in Illinois state court against his former employer, AT & T Corporation.[1] AT & T removed the case to federal district court based on the parties' diversity of citizenship, and Maier amended his complaint to add an Age Discrimination in Employment Act claim. *See* 29 U.S.C. §§ 621 *et seq.* The district court granted AT & T's motion for summary judgment with respect to the

---

1. Mr. Maier was a member of an organizational unit within AT & T that eventually became part of Lucent Technologies, Inc. ("Lucent"), now an independent corporation. Lucent and AT & T ask that we modify the caption and substitute Lucent for AT & T. Lucent claims to be a successor entity to AT & T and the real party in interest in this appeal. Lucent and AT & T contend that this transfer of interest warrants the requested substitution of Lucent for AT & T in this action. Rule 43(b) of the Appellate Rules provides: "If substitution of a party in the court of appeals is necessary for any reason other than death, substitution shall be effected in accordance with the procedure prescribed in subdivision (a)." Fed. R.App. P. 43(b). "Necessary," for purposes of Rule 43(b), means that the party for whom substitution is sought, here AT & T, is incapable of continuing with the litigation. One such instance is when a party transfers its interest in the company or property involved in the suit. *Jones v. Board of Governors of the Fed. Reserve Sys.*, 79 F.3d 1168, 1170 (D.C.Cir.1996) (citing *Alabama Power Co. v. I.C.C.*, 852 F.2d 1361, 1366 (D.C.Cir. 1988)); *cf. Fidelity & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.*, 25 F.3d 484, 485 n. 3 (7th Cir.1994) (granting parties' joint motion to substitute plaintiff's wholly-owned subsidiary as the real party in interest). Because AT & T's interest in this case has passed to Lucent, which is no longer a subsidiary of AT & T, we grant the motion. For convenience and clarity, however, we shall refer in the opinion to the Defendant–Appellee/Cross–Appellant as AT & T.

ADEA claim, but allowed the state law claim to go to trial. After a trial, the jury found that AT & T had breached Mr. Maier's employment contract and awarded him $75,000. Both parties appeal. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

Mr. Maier began working for Illinois Bell in March 1967. In 1984, he joined AT & T's Computer Systems Division ("CSD"). In 1989, he became a divisional manager, a D-band manager.[2] In late 1990 or early 1991, AT & T announced its planned merger with National Cash Register Corporation ("NCR"), a major computer company. This merger necessitated closing down the CSD. Mr. Maier was one of about 370 management employees appointed to a transition team to make sure that the merger with NCR was a smooth one. In exchange for remaining with the CSD and supervising the transition, AT & T promised Maier in a letter that, after the transition, he would have the opportunity to have a choice in his next assignment, and that his next assignment would be equivalent to or higher than his current salary grade.[3] After Mr. Maier completed his service on the transition team in April 1992, AT & T continued to pay Mr. Maier's salary and benefits, in addition to providing a number of other support services, while he looked for another position of at least a D-band level within AT & T. From October 1992 to June 1993, Mr. Maier worked on a temporary basis for AT & T's Chief Information Officer, an officer of the corporation, in New Jersey. Although most of the transition team members were able to be placed in new positions of at least the same salary grade through their own search efforts, by October 1992 some still had not found a place. Therefore, in late 1992, AT & T instituted a plan to place these remaining transition team members. Under the plan, each team member who had not found a new position would be given a job offer, his "allocation." The team member would then have one week either to accept or to reject the job. If the individual refused the job, he would have another 60 days to find a job within the organization or would be separated from the company. In March 1994, AT & T presented Mr. Maier with his allocation offer. Mr. Maier was offered a B-band position. The company had agreed, however, to protect Mr. Maier's salary grade for two years. His salary and personnel records would reflect his D-level status. Mr. Maier, without finding out the responsibilities and duties of the job, refused the position and was thus given 60 days to find another position. After this 60–day period, he selected a severance package that would keep him on the AT & T payroll somewhat longer, during which time he continued to look for another position within AT & T. He was not successful in this endeavor and was released in January 1995.

### B. *District Court Proceedings*

Mr. Maier filed suit in DuPage County Circuit Court, alleging that AT & T had

---

**2.** Some of the divisions within AT & T designate the level of their managers using a letter system, ranging from levels A to E. An A-band position corresponds to a first level manager, and an E-band position is an executive position. Mr. Maier's D-band designation meant that he was a division level manager. During the relevant time period, AT & T employed only about 2,000 D-band employees, fewer than 1% of its employee population.

**3.** The Transition Team Letter provided to Mr. Maier states:

[W]e agree to the following as part of this commitment.

At the completion of your assignment in the merger negotiation and transition periods, you are assured of an assignment which includes career choices from available positions in all AT & T Business Units and Divisions.

You will have the opportunity to have a choice in the matter of your next assignment.

Your next assignment will be equivalent to or higher than your current salary grade.

. . . .

If after this assignment [to the transition team] you are unable to find a satisfactory position within AT & T and choose to leave the business, you will receive a separation allowance. . . .

R.52, Ex.A at 8. A subsequent letter from AT & T to all transition team members lists AT & T's commitments to team members in bullet-point form. Those commitments are "Job Guarantee" and " 'Choice' On Next Assignment." R.24, Ex.7C at 1.

breached its employment contract to him, the Transition Team Letter. AT & T removed the case to federal district court based on the parties' diversity of citizenship, and Mr. Maier amended his complaint to add an ADEA claim. AT & T filed a motion for summary judgment.

The district court granted that motion in part. It granted summary judgment to AT & T on the issue of age discrimination, determining that Mr. Maier had not presented any evidence that younger similarly-situated employees had been treated more favorably. He therefore had failed to establish a prima facie case.

The district court denied AT & T's motion for summary judgment, however, on the breach of contract claim. It found that there was a question of fact as to whether the company had met its promise to provide a choice of D-band or higher positions. Prior to trial, the court granted AT & T's motion in limine, based on Illinois law, to exclude all evidence of damages that would occur after the date of trial. After a five-day trial, the jury returned a verdict in Mr. Maier's favor for $75,000. The district court later denied AT & T's post-trial motion for judgment as a matter of law and for a new trial. Both parties appealed.

## II

### DISCUSSION

Mr. Maier submits that the district court's grant of partial summary judgment to AT & T on the ADEA claim was erroneous and that a number of other evidentiary rulings of the district court were unsound. He also appeals the jury's verdict as inadequate, in spite of his failure to raise the issue before the district court. AT & T cross-appeals the district court's ruling that the Transition Team Letter was an enforceable contract and its denial of AT & T's post-trial motion. We shall address these issues in turn.

### A. *Age Discrimination Claim*

■ We review the district court's grant of summary judgment de novo; we draw all reasonable inferences supported by the record in favor of the non-moving party. *Denisi*

*v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996). Only if there is no genuine issue of material fact will we uphold the district court's grant of summary judgment. *Id.*

■ Under the ADEA, employers are prohibited from discriminating against employees at least forty years old based on their age. 29 U.S.C. §§ 621(b), 631(a). In order to establish an ADEA prima facie case, Mr. Maier must show that he was within the protected age group, that he performed his job satisfactorily, that he suffered an adverse employment action and that substantially younger employees were treated more favorably. *See O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Denisi*, 99 F.3d at 864. Only the last two elements were in dispute in the district court.

■ In response to AT & T's motion for summary judgment (on both the ADEA claim and on the state-law claim), Mr. Maier stated:

The demographics indicate that the Transition Team was made up of fifty nine percent (59%) of persons within the protected class. Of those persons subject to allocation[,] that class was made up of eighty nine percent (89%) persons within the protected class. Further, only three (3) D Band level employees were subject to allocation and all three (3) ultimately were terminated.... All three (3) D Bands were within the protected class.

Clearly, the policies of AT & T have had *disparate impact* upon those in the protected class. This impact is sufficient enough to make out and prove a prima facie case for age discrimination.

R.29 at 17–18 (emphasis added). Not once in his opposition brief did Mr. Maier contend that his claim was one for disparate treatment. Mr. Maier argued in his response that the "disparate impact" caused by the allocation policy is "sufficient enough to make out and prove a prima facie case." *Id.*

We have held that such a theory of liability is not cognizable under the ADEA.[4] Mr. Maier concedes as much in his brief to this court.[5] In his response to AT & T's motion for summary judgment, however, Mr. Maier provided only a statistically-based disparate impact theory and no more. He did not offer any *"evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion."* O'Connor, — U.S. at — , 116 S.Ct. at 1310 (brackets, ellipsis and emphasis in original) (internal quotation and citation omitted). He did not provide any evidence of AT & T's treatment of substantially younger employees who were similarly situated to him, whether that treatment was better, worse or equal. Without any such evidence, Mr. Maier cannot prevail on his ADEA claim, and we must uphold the district court's grant of partial summary judgment.

■ Mr. Maier also submits that the district court's decision not to allow him to supplement his response to AT & T's summary judgment motion was an abuse of discretion. More than five weeks after his response to AT & T's motion was due and more than a month after AT & T filed its reply to his response, Mr. Maier filed a motion to supplement his response. Attached to that motion was an expert's report and opinion based on the same statistics on which Mr. Maier had based his own opinion in his original response to AT & T's summary judgment motion. He urged the district court to accept the new materials despite their tardiness because of the difficult time that he had in finding an expert to perform the statistical analysis.

The district court denied his motion. The court found that the materials Mr. Maier submitted were not evidence that would be admissible at trial under Federal Rule of Civil Procedure 56(c). Also, Mr. Maier's expert had not been disclosed to the defendant in a timely fashion. Finally, the plaintiff had not sought to amend his Rule 12 statement or his response.[6] We review the district court's decision for an abuse of discretion. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997); *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir.1996). Because the trial court had ample reason to deny Mr. Maier's untimely and non-conforming motion, we cannot say that the court abused its discretion. See *Miksis v. Howard*, 106 F.3d 754, 760–61 (7th Cir.1997) (upholding district court's decision to strike expert witness testimony when the witness' identity was not disclosed in a timely manner).

## B. *Future Damages*

■ Mr. Maier also appeals the district court's decision to grant AT & T's motion in limine to exclude all testimony of damages arising from AT & T's breach of contract after the date of trial. The district court ruled that, under Illinois law, Mr. Maier would not be allowed to present evidence of any future damages resulting from his employer's breach of the employment contract. Because this claim is one that arises under state law, we must resolve this issue as the Supreme Court of Illinois would if it were faced with the identical situation. See *National Fire & Cas. Co. v. West*, 107 F.3d 531, 534 (7th Cir.1997). In this endeavor, we give due regard to other Illinois courts; we may disregard their guidance only if there are persuasive indications that the state's highest court would decide the issue differently. *Estate of Bowgren v. Commissioner*, 105 F.3d 1156, 1161 (7th Cir.1997).

■ With these principles in mind, we turn to Mr. Maier's contention. Illinois law

---

4. See *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir.1994) (noting that liability for age discrimination based on disparate impact theory is not available in Seventh Circuit), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995); *EEOC v. Francis W. Parker Sch.*, 41 F.3d 1073, 1078 (7th Cir.1994) (affirming summary judgment because "statistical correlation alone is insufficient to sustain a finding of ADEA liability"), *cert. denied*, 515 U.S. 1142, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995).

5. See Appellant's Br. at 34.

6. Mr. Maier urges for the first time to this court that the district court could have construed his motion under Federal Rule of Civil Procedure 56(f). Because he failed to press this claim first in the district court, Mr. Maier has waived this meritless argument.

on this subject is clear. The Supreme Court of Illinois has set out the rule that the district court followed. In *Mt. Hope Cemetery Ass'n v. Weidenman,* 139 Ill. 67, 28 N.E. 834, 836–37 (1891), Illinois' highest court adopted the rule that, in an action to recover for the breach of an employment contract, a plaintiff could not recover damages that might arise after trial. The Supreme Court of Illinois determined that such damages were uncertain and speculative. There has been no indication that this rule is no longer the law of Illinois. Illinois courts and federal district courts located in Illinois continue to recognize this rule as the law of Illinois.[7] We therefore must uphold the district court's decision to grant AT & T's motion in limine.

■■■ Mr. Maier makes one further, related argument. He submits that, even assuming the district court was correct in its estimation of Illinois law on the subject of future damages, it erred by not allowing the jury to hear evidence of his lost service pension benefits. He tried to introduce evidence, through the testimony of an expert witness, of the present value of his lost service pension benefits.[8] The trial court found that this evidence fell within the scope of its motion in limine and refused to admit the evidence.

Neither party disputes that the service pension would not begin paying benefits to Mr. Maier until after the date of trial; it would have taken roughly another year for Mr. Maier to qualify for the service pension. Nor has either party pointed to any analogous Illinois cases. AT & T contends, however, that because the rights had not vested—Mr. Maier would not be eligible for the benefits until a year after the trial—these benefits clearly fall within Illinois' prohibition of future, speculative damages. Mr. Maier counters that these damages were not prohibited by Illinois law. He argues that, had he been employed by AT & T at the time of the trial, he could have taken a year's leave of absence from AT & T (thus attaining the requirements for the service pension) or AT & T would have credited him the year towards the service pension. Thus, according to Mr. Maier, the lost pension benefits were damages that arose by the time of trial.

There is no evidentiary foundation for Mr. Maier's contention. Mr. Maier did not produce any evidence that AT & T had in place either a policy that would have entitled Mr. Maier to a one-year sabbatical from AT & T while remaining on the company rolls or a policy that would have waived the term-of-service eligibility requirement. The only evidence we found in our own review of the record is in Mr. Maier's proffer through his expert. Dr. Rushing testified outside the presence of the jury about the present value of the service pension based on his understanding that Mr. Maier would be able to qualify for the service pension. AT & T's counsel then asked:

Q: Where do you get that understanding from?

A: Mr. Maier told me that, and it is—has to do with a one-year leave of absence that would be taken to get up to that 30 years, I believe.

Q: Everything you know on the subject you just told me about you got from Mr. Maier?

A: On the one year?

Q: Yes.

A: He told me that. I can't recall as I sit here if it is [in] one of these pension documents that I had as well.

---

7. See, e.g., *Lewis v. Loyola Univ. of Chicago,* 149 Ill.App.3d 88, 102 Ill.Dec. 425, 429, 500 N.E.2d 47, 51 (1986) ("In Illinois, however, the damages awarded upon breach of an employment contract are limited to such damages as plaintiff may have accrued up to the date of trial, and damages beyond that date are disallowed due to their speculative and uncertain nature."); *Kolar v. National Ass'n of Sec. Dealers, Inc.,* No. 92 C 1918, 1993 WL 362448 (N.D.Ill. Sept.16, 1993) ("Under Illinois law in breach of employment contract cases, future damages after the trial date are not recoverable.").

8. Mr. Maier, as an employee of AT & T for 28 years, will be entitled to a pension from AT & T when he attains the age of 65. There is no dispute about this vested pension. Had Mr. Maier been employed with AT & T for another two years, however, he additionally would have met the requirements for a service pension from AT & T. Under the service pension, he would have been entitled to start receiving benefits immediately upon his separation from AT & T.

. . . .

A: I have reviewed the AT & T pension documents. I don't recall if anything about—I don't recall anything about a one-year leave of absence to get out to that 30–year period.

Q: And you don't know—so you wouldn't know anything about any conditions or requirements if such existed for that to occur?

A: That's correct.

Tr. at 651. This testimony certainly does not establish that, at the time of trial, had Mr. Maier still been employed by AT & T, he would have been entitled to the service pension. Dr. Rushing had no personal knowledge and could not remember seeing any documentary evidence indicating that Mr. Maier could have qualified for the service pension. Mr. Maier did not proffer testimony, based on his own knowledge, that AT & T had a policy that would bridge the gap, and we have not discovered any documentary evidence that such a policy existed. In short, Mr. Maier has failed to carry his burden of showing that the lost pension benefits are not future damages. Therefore, the district court was correct in excluding from evidence Dr. Rushing's testimony on the lost service pension benefits.

### C. *Inadequacy of the Jury's Verdict*

■ Mr. Maier also claims that, in spite of his failure to file a post-trial motion on the issue of damages, we should "reverse the Jury based upon the Jury's inadequate award [of] damages based upon the evidence." Appellant's Br. at 45. To the extent that this argument might be construed as a request for an additur, we are without power to grant the request. *See Gasperini v. Center for Humanities, Inc.,* — U.S. —, —, 116 S.Ct. 2211, 2222, 135 L.Ed.2d 659 (1996); *Dimick v. Schiedt,* 293 U.S. 474, 486–87, 55 S.Ct. 296, 301–02, 79 L.Ed. 603 (1935). If, on the other hand, Mr. Maier's argument is a request for a new trial based upon the inadequacy of the jury's verdict, we believe he has waived this argument. At no point did he raise this issue before the trial court. *See Hudak v. Jepsen of Illinois,* 982 F.2d 249, 250 (7th Cir.1992) (finding argument that

evidence did not support jury verdict waived because not raised in trial court). Even were we not to treat the argument as waived, it is without merit. Although AT & T did not present its own witness to testify about Mr. Maier's lost wages and benefits, it vigorously cross-examined Mr. Maier's expert on this issue. It elicited from Dr. Rushing responses that indicated areas in which the jury could have believed that Dr. Rushing's calculations were inflated or did not accurately reflect the damages Mr. Maier suffered.

### D. *Cross–Appeal*

■ AT & T filed a cross-appeal that raises several issues. First, AT & T contends, the Transition Team Letter is not an enforceable contract under Illinois law because it does not contain a durational term. Moreover, Mr. Maier provided no consideration to support the contract.

■ We cannot accept the first contention. Under Illinois law, an employer-employee relationship without an explicit durational term is presumed to be an at-will relationship. *See Evans v. Gurnee Inns, Inc.,* 268 Ill.App.3d 1098, 206 Ill.Dec. 551, 554, 645 N.E.2d 556, 559 (1994). However, this presumption is a rule of construction only; it can be overcome by demonstrating that the parties contracted otherwise. *Id.* (citing *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987)). Here, the Transition Team Letter's terms overcome the presumption and demonstrate that a durational term was intended by the parties. The Transition Team Letter commits AT & T to placing Mr. Maier in another assignment when his work on the transition team was finished. AT & T also promised to provide Mr. Maier with the choice of his next assignment after the transition team assignment was finished. If Mr. Maier was not satisfied with the choices of his assignment, according to the Transition Team Letter, he could leave AT & T. The contract did not terminate until these conditions were met. *Cf. Johnson v. George J. Ball, Inc.,* 248 Ill.App.3d 859, 187 Ill.Dec. 634, 617 N.E.2d 1355 (1993) (finding that, when contract indicated that parties contemplated that employee would work through

the end of a project, contract provided sufficient durational term). The Transition Team Letter's terms demonstrate that the parties did not intend an employment-at-will relationship but rather a contract for a duration.

▆ We also cannot accept AT & T's argument that Mr. Maier did not provide consideration for the contract. First, he agreed to, and did, work on the transition team. This continued work, after AT & T had made Mr. Maier a clear offer of which he was aware, is sufficient consideration. *Duldulao*, 106 Ill.Dec. at 12, 505 N.E.2d at 318. Further, by working on the transition team, he forewent the opportunity of looking for another position within AT & T until after the AT & T internal job market already had been flooded by the others from within CSD. Mr. Maier provided adequate consideration.[9] We reject AT & T's contention that the Transition Team Letter was not an enforceable contract.

▆ Second, AT & T argues that it fulfilled its duties under the contract and that this court should overturn the jury verdict. AT & T faces a significant hurdle in asking this court to overturn the jury verdict or to grant a new trial. Rule 50 of the Federal Rules provides the standard that AT & T must meet for us to overturn the verdict. *See Mayer v. Gary Partners & Co.*, 29 F.3d 330, 335 (7th Cir.1994). Therefore, AT & T must convince us that no reasonable jury could have found that AT & T did not fulfill its obligations under the Transition Team Letter. *See* Fed.R.Civ.P. 50(a)(1). AT & T cannot overcome this hurdle. The Transition Team Letter guaranteed Mr. Maier "an assignment which includes career choices from available positions in all AT & T Business Units and Divisions." R.52, Ex.A at 8. AT & T also promised that Mr. Maier would "have the opportunity to have a choice in the matter of [his] next assignment." *Id.* We believe that these provisions committed AT & T to giving Mr. Maier a choice of assignments— i.e., at least two job offers. This reading is supported by a later letter that AT & T transmitted to Mr. Maier. *See* R.24, Ex.7C

at 1 (listing as AT & T's commitment to Mr. Maier a "Job Guarantee" and a " 'Choice' On Next Assignment"). Although AT & T contends that it did make Mr. Maier two job offers—one in New Jersey with AT & T's Chief Information Officer and the other, his allocation offer—, Mr. Maier testified that he never received the first offer, and a jury was entitled to believe Mr. Maier on this point. Therefore, a jury could have concluded that AT & T provided Mr. Maier with only one job offer, thereby breaching its promise in the Transition Team Letter to give him a choice of offers. Similarly, the district court did not abuse its discretion in denying AT & T a new trial, as the verdict was adequately supported by the trial evidence. *See Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir.1996).

▆ AT & T next argues that, even if it breached Mr. Maier's contract, he was not entitled to any damages because he failed to mitigate damages by accepting the B-band position with the D-band salary. Illinois law requires that, when an employer breaches the employment contract, the employee reasonably mitigate damages or suffer a reduction in his damages by the amount he reasonably could have mitigated. *Arneson v. Board of Trustees*, 210 Ill.App.3d 844, 155 Ill.Dec. 252, 257, 569 N.E.2d 252, 257 (1991). "However, when the alternate employment is an offer of reemployment by the original employer the employee need not always accept such an offer or be precluded from seeking damages.... [T]he fact that the salary was the same does not erase the stigma attached to the demotion and change of duties." *Id.*, 155 Ill.Dec. at at 257–58, 569 N.E.2d at 257–58; *accord Schwarze v. Solo Cup Co.*, 112 Ill.App.3d 632, 68 Ill.Dec. 228, 232, 445 N.E.2d 872, 876 (1983). Further, Mr. Maier was not separated from AT & T until well after the B-band job was offered to him. During that time, he continued to try to find a D-band job within AT & T. After he did leave AT & T, Mr. Maier found and accepted another job within about three months. Evidence of the income from the new job was presented to the jury so that it could account for the amount that Mr. Maier received from his new position in its award.

---

9. Presumably, AT & T must have thought that, by accepting the transition team assignment, Mr. Maier was providing a special benefit to AT & T.

It paid Mr. Maier an extra $40,000 bonus for accepting his position with, and fulfilling his duties to, the transition team.

Under the circumstances, Mr. Maier reasonably mitigated his damages.

Finally, AT & T contends that some of the testimony that the trial court admitted was inadmissable hearsay that significantly prejudiced AT & T. The trial court initially excluded this testimony, but, after finding that AT & T had placed Mr. Maier's competence and candor at issue, it allowed Mr. Maier's witness, an AT & T management placement consultant, to introduce portions of a report that contradicted AT & T's assessment of his competence and character. We review the trial court's decision under an abuse of discretion standard. *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.1997). We do not believe that the district court abused its discretion by admitting such testimony; AT & T had raised the issue of others' assessments of Mr. Maier's work. Further, we do not believe that AT & T was prejudiced by the testimony.

### Conclusion

For the foregoing reasons, we grant the motion to change the appellate caption and affirm the judgment of the district court.